IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs April 26, 2011

## GARY JOSEPH LATHAM v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Cumberland County**
**No. 7217     Leon Burns, Jr., Judge**

---

**No. E2010-01885-CCA-R3-PC - Filed January 6, 2012**

---

Petitioner, Gary Joseph Latham, appeals from the post-conviction court's dismissal of his petition for post-conviction relief following an evidentiary hearing. Petitioner asserts in this Court that he received ineffective assistance of counsel at the trial which resulted in his conviction for aggravated child abuse. He also argues that he is entitled to post-conviction relief because "the introduction of perjured testimony [at trial] invalidate[s] the conviction." Finding no error, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS, J., joined. DAVID H. WELLES, SP.J., not participating.

James S. Smith, Jr., Rockwood, Tennessee, for the appellant, Gary Joseph Latham.

Robert E. Cooper, Jr., Attorney General and Reporter; Matthew Bryant Haskell, Assistant Attorney General; Randall A. York, District Attorney General; and Gary McKenzie, Assistant District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

## I. Background

Petitioner was tried for the felony murder and aggravated child abuse of the victim, a child less than six years of age. The jury convicted Petitioner of the aggravated child abuse count and acquitted him of felony murder, but found him guilty of the lesser included offense of aggravated child abuse. The trial court merged the two convictions and sentenced him to serve twenty-two years for the aggravated child abuse conviction, and this Court affirmed.

*State v. Gary Joseph Latham*, No. E2006-02262-CCA-R3-CD, 2008 WL 748381 (Tenn. Crim. App. March 20, 2008), *perm. app. denied* (Tenn. Sept. 29, 2008). The recitation of the facts developed at trial takes up approximately seventeen pages of this Court's opinion so we will not set forth a verbatim quote from the opinion. However, a summary of the facts from this Court's discussion of Petitioner's sufficiency of the evidence issue is helpful. This Court stated:

> In the light most favorable to the state, the evidence establishes that the victim suffered serious bodily injury while in the exclusive care of the defendant. The state's evidence from three medical doctors who treated the victim or examined her body post-mortem established that the victim's injuries were not consistent with the defendant's explanation of how they occurred. Further, the state's evidence demonstrated that the victim's injury was consistent with her head having been slammed into a wall in her bedroom where an indentation in which an imbedded strand of her hair was found. Although the defendant testified that the victim was injured in a fall and that he did not cause her injuries, the jury had the opportunity to assess his credibility during his testimony and weigh it against the conflicting proof. Likewise, the jury had the opportunity to weigh the testimony of defense expert Dr. McCormick that the victim's injuries were consistent with the defendant's report that she had fallen down stairs against the contrary testimony of the state's medical witnesses.

*Id.* at *19.

The sole allegation of ineffective assistance of counsel asserted by Petitioner on appeal is that trial counsel rendered deficient performance by failing to develop an "alternate theory" explaining the victim's injuries. Regarding his "perjured testimony" issue, Petitioner asserts that an aunt (who is a sister of the victim's mother) of the victim admitted to the victim's mother approximately two years after the trial that some of her (the aunt's) testimony at trial had not been accurate.

## II. Post-Conviction Hearing

Gary Latham, Petitioner's father, testified that he was at the hospital after the victim was taken there for treatment. The victim went to the hospital on a Tuesday. Mr. Latham was told that on the previous Saturday the victim fell on the concrete at her grandmother's house and the victim's head bounced "three times." He testified that this information was given to trial counsel several times, with the last time being about one month prior to the trial. Also, Mr. Latham testified that Petitioner brought the victim by Mr. Latham's house

on the morning of, and prior to, the "awful event," which was a reference to the victim being taken to the hospital where the victim died. The victim was being kept out of school due to being tired and having a headache. Mr. Latham also gave this information to trial counsel several times. Mr. Latham acknowledged that trial counsel was never interested in investigating the possibility that the victim's injuries were caused by a fall at her grandmother's home three days prior to the victim going to the hospital. Mr. Latham said trial counsel finally got "kind of angry" and stated to Mr. Latham that "we can't change horses in mid[-]stream." Mr. Latham also added that trial counsel never obtained the medical records of the victim from her stay at the University of Tennessee Hospital.

Mr. Latham testified on direct examination that the prosecutor offered the medical records to trial counsel on the morning of the trial, before it began, but trial counsel refused to take them. Mr. Latham testified that the defense did not have the benefit of possessing the victim's medical records at any time during the trial. However, on cross-examination, Mr. Latham admitted that he did not have the victim's medical records, and nobody else in his family had them, even though he had seen the medical records himself prior to the trial. Mr. Latham claimed that trial counsel refused to accept a copy of the medical records from Mr. Latham's family and that trial counsel insisted he would only take a copy of the records from the prosecutor. Mr. Latham also admitted on cross-examination that he did not know for sure that the documents offered to trial counsel by the prosecutor on the morning of the trial were in fact the victim's medical records. Mr. Latham testified that he had no dispute with the credentials of Dr. McCormick, the defense's expert witness, who testified as to his opinion of the cause of the victim's injuries.

Petitioner's wife, Monica Latham, testified that the victim was her daughter. She identified tape recordings of a telephone conversation with her sister Sonda. This conversation took place approximately two years after Petitioner's trial. Ms. Latham transcribed what was on the cassette tapes, and the transcript and the tapes were made exhibits at the post-conviction hearing. As to what was relevant to Petitioner's post-conviction proceedings in the phone conversation, on direct examination Ms. Latham testified as to what her sister Sonda said:

> [Sonda] said that she didn't see [Petitioner] hold [the victim] up by her arm to whip her. And [Sonda] said that she does not recall any ice cream. [Sonda] never seen [sic] [Petitioner] bust [the victim's] lip. [A]nd [Sonda] said that she [Sonda] didn't say these things.

This was the extent of Ms. Latham's testimony on direct examination by Petitioner's attorney. On redirect examination, Ms. Latham acknowledged the accuracy of the following question by her and the answer by Sonda during the taped conversation:

-3-

[Ms. Latham]:        But did the things you answered come out of your head?

[Sonda]:        Well, they did come out of my head, but they stretched the truth a little far.

On cross-examination, Ms. Latham admitted that Sonda stated the following things during the phone conversation:

Well, I did see [Petitioner] whip [the victim].

All of this is a blur at this point. [referring to what Sonda stated at the hospital]

No, I [Sonda] did see [Petitioner] whip [the victim], and [the victim] was bent over the bed. [Petitioner] was - - he wasn't holding her, but it is so hard to look at.

[Sonda] said she [Sonda] seen [sic] [Petitioner] holding [the victim] over the - - holding [the victim] bent over the bed, [the victim] was bent over the bed.

Ms. Latham also admitted on cross-examination that she called Sonda to hopefully have Sonda admit that she lied during the trial.

Sonda Manning Harris, the victim's aunt, and Monica Latham's sister, also testified at the post-conviction hearing. She stated that she was fifteen years old when she testified at Petitioner's trial and that she remembered some of that testimony at the time of the post-conviction hearing. Ms. Harris testified that Monica Latham, in the phone conversation which was recorded, attempted to get Ms. Harris to "tell them that I was lying."

Ms. Harris stated, in reference to her testimony at trial, that "[e]verything in that testimony was true." Ms. Harris testified that she did not remember stating some of the things indicated in the transcript of her phone conversations with Monica Latham. In fact, by the time of the post-conviction hearing (approximately three years after the telephone conversations), Ms. Harris did not remember much at all about what was said during those conversations.

Regarding the victim's fall at her grandmother's house on the Saturday before the victim was taken to the hospital on the following Tuesday, Ms. Harris testified that she was

-4-

present when the incident occurred. Ms. Harris was in the living room when the victim was walking and tripped on her own foot and fell. The victim was not hurt, she did not cry, and the victim's head did not bounce two or three times when it hit the floor.

Ms. Harris testified on cross-examination that she told the truth when she testified at trial and that she never told Monica in any conversation that she (Sonda Harris) had lied at the trial.

Petitioner testified at the post-conviction hearing. As to his allegation that trial counsel failed to adequately interview investigators, Petitioner testified that,

> [Trial counsel] didn't interview everybody that he said he was going to interview, and we were just curious as to – as to why.

As to *which* law enforcement officer(s) was not interviewed Petitioner testified, "I'm not positive, but I don't think he interviewed Tommy Callahan."

As to the victim's medical records from the University of Tennessee Hospital, Petitioner stated that he was present on the morning of the trial in the courtroom when the prosecutor tendered the records to trial counsel, and trial counsel refused to accept them. Petitioner complained about a letter that the District Attorney General wrote to an inmate in the Department of Correction, which Petitioner claimed caused him to be beaten when he arrived in prison.

Petitioner also testified that trial counsel rendered ineffective assistance of counsel by failing to interview Wiley Potter, but Petitioner offered nothing insofar as what Wiley Potter would have known about the case. The same situation applied to a Dr. Jons, according to Petitioner.

Trial counsel testified that he had been practicing law for twenty-three years. George Lambert, the investigator for trial counsel's law firm, had been an FBI agent for over thirty years. Mr. Lambert interviewed numerous people during the course of investigating Petitioner's case. Dr. William Frederick McCormick, a pathologist, was retained to review all the medical records, gave his findings to trial counsel, and from this the defense strategy was developed.

Trial counsel recalled being advised that the victim had had a hard fall at her grandmother's home a few days before she had to be taken to the hospital where she ultimately died. In response to the questioning about why the fall at the grandmother's house was not offered in the defense proof, trial counsel testified as follows:

Q.      All right.  From a reading of the transcript, it doesn't appear that that was, that is the alleged fall at the grandmother's, or whatever effects it may have had on [the victim], it doesn't appear to me that that was discussed at all during the trial, or that any medical testimony was directed to that matter.  Is that your recollection?

A.      You know, it was.  And I'm sure you've reviewed the medical proof and the medical testimony from Dr. McCormick.  Dr. McCormick is one of the few doctors that has four board certifications, and our focus at trial was the head injuries that, under our theory of the case, [were] caused by the child falling down the stairs that morning. There was some very significant trauma.  The child suffered debilitating, and eventually fatal, closed head injuries.  Dr. McCormick had a very strong opinion that those injuries were caused by a fall on the stairs.  In retrospect, I don't think Dr. McCormick felt that a fall at the grandmother's house was significant as it related to those injuries that we felt were caused by the stairs.

Trial counsel recalled that there was difficulty in obtaining some, but not all, of the pertinent medical records.  He did not recall declining to accept any proffered medical records.  Trial counsel objected strenuously at trial to Dr. Chaise Jons' testimony that the trauma to the victim's head could not have been caused by a fall down the stairs.  The objection was based upon the doctor's lack of qualifications to form that expert opinion, and because the defense had not been provided with that particular expert witness evidence prior to trial.  Trial counsel acknowledged that if a person was named on the State's witness list, an attempt would be made to interview that person.

## III.  Post-Conviction Court's Findings

The post-conviction court made extensive findings of fact on the record at the conclusion of the hearing, and also filed its findings in the order denying post-conviction relief.  The findings pertinent to the specific issues raised on appeal by Petitioner are as follows.  At the close of the hearing the post-conviction stated from the bench:

THE COURT:      As I recall, Dr. McCormick was given all of the files and reviewed all the files, and they came to some understanding that the previous fall was not significant enough to impact the trial strategy.  It seems to me, based on the medical proof at the time of

-6-

the trial, when the child came into the emergency room here in Cumberland County, that it was obvious she was in distress. I think there was even reference to the fact that pupils were blown, or one of them was, and the defendant here was greatly concerned about what that meant and so forth, and they were obviously concerned about the child at the time she came in, all to say that the injury was significant that brought her in.

The three days prior, to a fall, even if the head bounced, Dr. McCormick looked at the records, it seems to me, and the proof would suggest, that he did not think that had any bearing upon the injury at the time that she was brought into the emergency room.

. . . .

[Trial Counsel] vigorously defended this case, aggressively defended this case, and almost everything that was done, he was objecting and raising all sorts of issues,

. . . .

There was also an allegation here in the petition that the testimony - - the conviction was based on perjured testimony of Sonda and Shanna Manning. And although there have been some allegations here and references to transcripts after the fact that maybe the testimony was stretched, or whatever, there's nothing to suggest to me that there was perjured testimony at the time of the trial. The witness said today, what she said at trial was true, and there's nothing to suggest that - - to cause the Court to believe otherwise. So, I don't think that has been proven.

## IV. Analysis

Petitioner's argument as to the sole claim of ineffective assistance of counsel is based upon the assertion that trial counsel "ignored" evidence of the victim's fall at her

-7-

grandmother's house three days prior to going to the hospital with serious trauma. Petitioner even argues that trial counsel offered *no* theory contrary to the State's theory. This contention is clearly refuted by the record, which shows that Petitioner testified the victim accidently fell down some steps while going into the home.

As to the perjured testimony claim, Petitioner candidly, (even if implicitly), admits that the post-conviction trial court must believe: that a witness's trial testimony must be false, that the recantation testimony is truthful, *and* that the jury might have reached a different conclusion had the truth been told, in a *coram nobis* proceeding. *See State v. Workman*, 111 S.W.3d 10, (Tenn. Crim. App. 2002). The State asserts that recanted testimony is not an appropriate ground for relief in a post-conviction proceeding, and argues that Petitioner failed to show by clear and convincing evidence that trial counsel rendered ineffective assistance of counsel.

To sustain a petition for post-conviction relief, a petitioner must prove his or her factual allegations by clear and convincing evidence at an evidentiary hearing. *See* Tenn. Code Ann. § 40-30-110(f); *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999). Upon review, this Court will not reweigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the post-conviction judge, not the appellate courts. *See Momon*, 18 S.W.3d at 156; *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997). The post-conviction judge's findings of fact on a petition for post-conviction relief are afforded the weight of a jury verdict and are conclusive on appeal unless the evidence preponderates against those findings. *See Momon*, 18 S.W.3d at 156; *Henley*, 960 S.W.2d at 578.

The Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution guarantee a criminal defendant the right to representation by counsel. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Both the United States Supreme Court and the Tennessee Supreme Court have recognized that the right to such representation includes the right to "reasonably effective" assistance, that is, within the range of competence demanded of attorneys in criminal cases. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984); *Burns*, 6 S.W.3d at 461; *Baxter*, 523 S.W.2d at 936.

A lawyer's assistance to his or her client is ineffective if the lawyer's conduct "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686. This overall standard is comprised of two components: deficient performance by the defendant's lawyer and actual prejudice to the defense caused by the deficient performance. *Id*. at 687; *Burns*, 6 S.W.3d

at 461. To demonstrate prejudice, a defendant must show "a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. The defendant bears the burden of establishing both of these components by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); *Burns*, 6 S.W.3d at 461. The defendant's failure to prove either deficiency or prejudice is a sufficient basis upon which to deny relief on an ineffective assistance of counsel claim. *Burns*, 6 S.W.3d at 461; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996).

In evaluating a lawyer's performance, the reviewing court uses an objective standard of "reasonableness." *Strickland*, 466 U.S. at 688; *Burns*, 6 S.W.3d at 462. The reviewing court must be highly deferential to counsel's choices "and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462; *see also Strickland*, 466 U.S. at 689. The court should not use the benefit of hindsight to second-guess trial strategy or to criticize counsel's tactics*, see Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982), and counsel's alleged errors should be judged in light of all the facts and circumstances as of the time they were made, *see Strickland*, 466 U.S. at 690; *Hicks v. State*, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998).

A trial court's determination of an ineffective assistance of counsel claim presents a mixed question of law and fact on appeal. *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001). This Court reviews the trial court's findings of fact with regard to the effectiveness of counsel under a de novo standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise. *Id*. "However, a trial court's *conclusions of law*—such as whether counsel's performance was deficient or whether that deficiency was prejudicial—are reviewed under a purely *de novo* standard, with no presumption of correctness given to the trial court's conclusions." *Id*. (emphasis in original).

In order to be entitled to post-conviction relief a petitioner must prove his factual allegations by clear and convincing evidence at the evidentiary hearing. Tenn. Code Ann. § 40-30-110(f). We agree with the State that Petitioner failed to prove his factual allegations by clear and convincing evidence. At the post-conviction hearing Petitioner's father testified that he was told the victim fell and hit her head three days before she was taken to the hospital with the trauma which led to her death. No medical proof was offered at the evidentiary hearing concerning this incident or any trauma it allegedly caused the victim. Petitioner's father was not present when it happened. In fact, Ms. Harris testified at the post-conviction hearing that she was present when the incident occurred. She stated the victim was not hurt, that she did not even cry, and that the victim's head certainly did not "bounce" multiple times upon hitting the floor. Petitioner's trial counsel testified that the expert witness used by the defense at trial "had a very strong opinion" that the victim's injuries were the result of a fall down steps at the home on the day she had to be taken to the hospital. This

was absolutely consistent with statements made by Petitioner prior to trial and with his testimony at trial. Trial counsel testified that "[i]n retrospect, I don't think Dr. McCormick felt that a fall at the grandmother's house was significant as it related to those injuries that we felt were caused by the stairs."

Regarding Petitioner's argument that he is entitled to relief based upon perjured testimony at his trial, we have carefully reviewed the evidence submitted at the post-conviction hearing concerning this issue. At most, Petitioner showed that a witness at trial can possibly be impeached several years after the trial, by statements she made in a secretly recorded phone conversation with Petitioner's spouse, who readily admitted that she was hoping that the witness would admit she had lied at the trial.

We agree with the post-conviction court's findings of fact and its ruling that Petitioner's post-conviction petition must be denied.

## CONCLUSION

The judgment of the post-conviction court is affirmed.


_____
THOMAS T. WOODALL, JUDGE